# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT LOUISVILLE

**EDWARD H. FLINT**                                                                      **PLAINTIFF**

**v.**                                                             **CIVIL ACTION NO. 3:11CV-276-S**

**STEVE BESHEAR** *et al.*                                                             **DEFENDANTS**

## MEMORANDUM OPINION

Plaintiff, Edward H. Flint, filed this civil action on May 9, 2011. He sues Kentucky Governor Steve Beshear; Kentucky Supreme Court Justices Mary C. Noble and Lisabeth H. Abramson; Kentucky Supreme Court Special Justices Bradley P. Rhoads and John S. Reed; and Jane and John Does.[1] The Defendants are sued in their individual capacities.

Upon review, the Court concludes that it lacks subject-matter jurisdiction over this action. Accordingly, the Court will dismiss it pursuant to its authority under FED. R. CIV. P. 12(h)(3) and *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999).

### I. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff states in his complaint that he previously filed a lawsuit against Defendant Beshear in federal court.[2] At the same time, he apparently had three cases pending before the Kentucky Supreme Court.[3] He alleges that "Defendant Beshear appointed two persons to set [sic] on the Supreme Court as judges, fifteen (15) days after Plaintiff served a [federal] lawsuit against him." Plaintiff contends that Defendant Beshear's selection of Defendant Special

---

[1] In the parties section of his complaint, Plaintiff states that "Jane and John Does are persons unknown at this time, but if one or more appears in discovery, they will be added to the complaint by their real name." Otherwise, his complaint is devoid of any mention of the "Jane and John Doe Defendants."

[2] Plaintiff does not provide either the case number or name of the prior federal lawsuit in his complaint.

[3] Plaintiff does not provide either the case numbers or names of the three, state-court actions in his complaint.

Justices was motivated by his desire to make sure that Plaintiff did not prevail before the Kentucky Supreme Court in any of his three cases.[4] He states in turn that Defendant Special Justices accepted the appointments even though they were not qualified to serve on the Kentucky Supreme Court to please Defendant Beshear so that they could win state-awarded contracts later on.

Plaintiff alleges that Defendant Justice Abramson recused herself from sitting on Plaintiff's appeals only after he called it to her attention that he knew that she and her husband were friends with Dennis Stilger, a party to the actions. Even after recusal, Plaintiff alleges that Defendant Justice Abramson "didn't drop the effort [against him], [she] enlisted her court cohorts, the defendants to help her rule for her friend Mr. Stilger and against Flint."

Plaintiff alleges that Defendant Justice Noble "who was acting as Chief Judge in the three Flint cases, issued three orders on April 13, 2011, that intentionally left information off, that should have been on the order and Judge Noble did this to hide information from Flint." He also alleges that Defendant Justice Noble further wrongfully administered his cases in violation of his rights. He alleges that the "Flint cases may not have been judged as required by the courts and the judgment and orders against him may not have been by a majority of the sitting court judges."

In sum, Plaintiff states that "all Defendants, although maybe for different reasons, found working together against Flint was to their benefit in their cause in seeing Flint did not win any of his cases."

---

[4]Section 110(3) of the Kentucky Constitution requires the Governor to appoint special justices to the Kentucky Supreme Court "if as many as two justices decline or are unable to sit in the trial of any cause." *Revenue Cabinet v. Smith*, 875 S.W.2d 873, 879 (Ky. 1994) (quoting KY. CONST. § 110(3)).

2

As relief, Plaintiff is seeking: 1) compensatory and punitive damages; 2) removal of Defendants from office; 3) reinstatement of his state lawsuits before the Kentucky Supreme Court and rehearing by an unbiased court; 4) the costs of this action; and 5) any other relief to which he is entitled.

## II. STANDARD OF REVIEW

Generally, a district court may not *sua sponte* dismiss a complaint where the filing fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint. *See Apple v. Glenn*, 183 F.3d at 479. However, where a complaint is "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion," the district court need not afford the plaintiff an opportunity to amend the complaint, especially where the district court has determined that it lacks subject-matter jurisdiction over the action. *Id.* (citing *Hagans v. Lavine*, 415 U.S. 528, 536 (1974)).

Furthermore, "[a] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). Under the Federal Rules of Civil Procedure, the Court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction." FED. R. CIV. P. 12(h)(3). The dismissal should issue as soon as the Court determines that subject-matter jurisdiction is lacking.

3

## III. ANALYSIS

Upon review, the Court finds that it lacks jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine prevents inferior federal courts from exercising jurisdiction to engage in appellate review of final decisions of state courts. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *District of Columbia Crt. of App. v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). "[O]nly the United States Supreme Court has jurisdiction to correct state court judgments." *Gottfried v. Med. Planning Servs., Inc.*, 142 F.3d 326, 330 (6th Cir. 1998).

"[S]tate-court losers" cannot file suit in federal district courts "challenging 'state court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curium) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. at 284). The *Rooker-Feldman* doctrine prevents both a direct attack of the substance of a state-court decision and any challenge to the procedures used by the state court in arriving at its decision. *Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 493 (6th Cir. 2001).

A fair reading of Plaintiff's complaint reveals that this case is essentially an appeal of the three, state-court judgments that the Kentucky Supreme Court decided against him. Indeed, one need only look at the relief section of Plaintiff's complaint as proof of this fact. Among other relief, Plaintiff seeks "that all of Flint's lawsuits that was [sic] dismissed by the actions of those defendants sitting as judges [that] are found guilty on any allegation in this complaint be reinstated to the Supreme Court and heard by a[n] elected Kentucky Supreme Court that does not contain any of those found guilty and Flint be allowed to attend all hearing[s] held on any case that is returned to the court."

Plaintiff cannot escape the *Rooker-Feldman* doctrine by labeling his action as one to vindicate the violation of his "due process rights." *See Gottfried v. Med. Planning Servs.*, 142 F.3d at 330 (explaining that the *Rooker-Feldman* doctrine applies "in constitutional cases brought under § 1983, since federal courts must give 'full faith and credit' to the judicial proceedings of state courts"); *Danforth v. Celebrezze*, 76 F. App'x 615, 617 (6th Cir. 2003) (holding that plaintiff's civil rights action was essentially a pretense to obtain federal review of the state-court procedures and rulings in a domestic relations case).

Any review of Plaintiff's constitutional claims, even those against Defendant Beshear, would require the Court to question the propriety of the state-court processes and judgments, thereby violating the *Rooker-Feldman* doctrine. *See Patmon v. Mich. Sup. Crt.*, 224 F.3d 504, 510 (6th Cir. 2000) (affirming dismissal of complaint against the Michigan Supreme Court and other state officials complaining they violated plaintiff's due-process rights in connection with his bar suspension). This is true because irrespective of Defendant Beshear's motivations behind naming the Special Justices to the Kentucky Supreme Court, the source of Plaintiff's alleged injuries remains the decisions those Special Justices made once they were seated on the Kentucky Supreme Court. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006) ("The inquiry . . . is the source of the injury the plaintiff alleges in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction.").

### IV. CONCLUSION

Upon review, the Court concludes that *sua sponte* dismissal is appropriate because the *Rooker-Feldman* doctrine prevents this Court from exercising jurisdiction over Plaintiff's claims.

5

*See Russell v. Garrard*, 83 F. App'x 781, 782 (6th Cir. 2003) (citing *Apple v. Glenn* in affirming the district court's decision that the *Rooker-Feldman* doctrine divested it of jurisdiction in a case where the plaintiff alleged that the assistant attorney general of Michigan improperly exercised his influence in an unemployment compensation action); *Doscher v. Menifee Circuit Court*, 75 F. App'x 996, 997 (6th Cir. 2003) (affirming district's court *sua sponte* dismissal of a fee-paid case because the district court lacked jurisdiction to consider whether a state foreclosure action was conducted without regard to state procedures and motivated by favoritism to the bank).

Thus, even though Plaintiff paid the $350.00 filing fee in this case, the Court should not wait for service on and answers by Defendants to dismiss this action for lack of subject-matter jurisdiction. This is so because Defendants can neither create nor waive subject-matter jurisdiction. *Thomas v. Miller*, 489 F.3d 293, 298 (6th Cir. 2007) ("Parties cannot create subject-matter jurisdiction by contract where none exists, nor can they waive a court's lack of subject matter jurisdiction because, quite simply, subject matter jurisdiction cannot be created where none exists."); *Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir. 1998) ("Quite aside from whether the parties raise jurisdictional issues themselves -- or even attempt to consent or agree to federal jurisdiction -- federal courts have an independent obligation to investigate and police the boundaries of their own jurisdiction.").

Accordingly, for the reasons set forth in this Memorandum Opinion, the Court will enter a separate Order dismissing this action for lack of subject-matter jurisdiction.

Date:


cc: Plaintiff, *pro se*
 Defendants
4411.008